The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Pamela T. Young and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award. Accordingly, the Full Commission affirms with some modification the Opinion and Award of the Deputy Commissioner.
***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties at the hearing as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers Compensation Act.
2. An employment relationship existed between plaintiff-employee and defendant-employer at all relevant times herein.
3. At all relevant times herein, defendant-employer was a duly qualified self-insured with AIG Claims Services as its third-party administrator.
4. The parties stipulated that plaintiffs average weekly wage was $560.00, yielding a compensation rate of $373.52.
5. The parties stipulated to plaintiffs medical records from Durham Regional Hospital.
6. The issues presented are:
a) Whether plaintiff sustained an injury by accident arising out of his employment with defendant-employer on June 4, 1998 and July 2, 1998.
b) Whether plaintiff is entitled to any benefits under the North Carolina Workers Compensation Act.
***********
Based upon all the evidence adduced from the record, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. At the time of the hearing before the deputy commissioner, plaintiff-employee was 23 years old and had performed construction work since he was 14 years old.
2. Plaintiff began working for defendant-employer approximately January 1998 as a lead man. Plaintiffs job duties included supervising a crew of carpenters in preparing tunnels at a work site by building forms for concrete pours.
3. On June 4, 1998, plaintiff released his crew to go home due to inclement weather and as the plaintiff descended a hill, he slipped and fell with his left arm outstretched behind him as he slid down the hill. Plaintiff felt immediate pain in his left shoulder. On the eve of June 4, 1998, plaintiff continued to experience a slow dull ache in his left shoulder.
4. Plaintiff returned to work on June 5, 1998 with a stiff left arm and reported to his supervisor, Doug Taylor, that he had slipped and hurt his arm the day before. At the hearing, plaintiff testified that he did not know if Mr. Taylor was still employed by defendant-employer.
5. On the night of June 5, 1998, the plaintiff and his friends went out to shoot pool, but the plaintiffs left shoulder pain prevented him from holding his pool cue correctly and he could not participate. Plaintiff talked his friends into leaving early because of his pain. During the weekend of June 6 and 7, 1998, the plaintiffs shoulder pain worsened.
6. Plaintiff presented to the Durham Regional Hospital emergency room on June 8, 1998 and reported noticing worsening left shoulder pain as he attempted to shoot pool on June 5, 1998. Plaintiff reported worsening pain upon lifting his left arm.
7. Durham Regional Hospital staff had asked plaintiff if he had experienced any trauma to his arm or shoulder and he answered no. At the hearing, plaintiff admitted not knowing the meaning of the word "trauma. Plaintiff said he thought trauma meant a severe kind of incident like a gun shot.
8. Plaintiff reported his left shoulder injury to the Safety Director, Michael Adams, who advised the plaintiff to seek medical attention for his left shoulder.
9. Michael Adams testified that plaintiff reported to him that the hospital thought he might have left shoulder bursitis and that plaintiff did not know whether or not he had injured it at work. The superintendent, Vance Cleveland, also testified for defendant-employer that he spoke with plaintiff on or about June 9, 1998 and that plaintiff reported the same information to him. Mr. Cleveland also acknowledged the fact that workers may slip and fall, but not know at the time whether they had sustained a minor or major injury and thus not report it right away.
10. On June 9, 1998, plaintiff presented to Dr. Richard F. Bruch, an orthopaedic surgeon. Plaintiff reported that on June 4, 1998, while at work, he slipped on a wet hill, fell backwards and reached to catch himself with his left hand. Dr. Bruch diagnosed plaintiff with post-traumatic bursitis of the left shoulder, but said that "patient will be rechecked in two weeks and if not significantly improved likely will have further study to rule out rotator cuff rupture. Dr. Bruch took plaintiff out of work until June 11, 1998 and restricted plaintiff from lifting above shoulder level until he was seen again by Dr. Bruch.
11. Dr. Bruch recommended an MRI of plaintiffs left shoulder on June 16, 1998, approved plaintiffs absence from work through June 16, 1998 and again restricted him from lifting above shoulder level. Defendant refused to authorize the MRI.
12. Plaintiff returned to work; however, on or about July 2, 1998, plaintiff saw that a ladder was about to fall onto two co-workers below and as plaintiff grabbed the ladder to stop it from falling, his left shoulder was jerked and he felt immediate increased pain. Plaintiff immediately reported this incident to Vance Cleveland who told plaintiff to go home and rest and see if it would not get better.
13. Plaintiffs last day of work with defendant-employer was on July 2, 1998 due to increased pain in his left shoulder. Plaintiff testified that on July 2, 1998, Doug Taylor told him "if you are hurt, we cant use you. Michael Adams testified, when asked if he knew plaintiff was terminated, that he thought plaintiff just stopped coming to work. Mr. Adams further testified that plaintiffs supervisor never noted in any file or report that plaintiff had been terminated.
14. Plaintiff presented to Dr. Bruch on July 7, 1998 complaining of increased left shoulder pain due to the ladder incident at work. Dr. Bruch altered his original June 9, 1998 diagnosis of plaintiff from post-traumatic bursitis to a strain and possible labrium tear of the left shoulder. Dr. Bruch took plaintiff out of work until July 8, 1998 and ordered plaintiff not to do any lifting above shoulder level upon his return to work.
15. On July 10, 1998, plaintiffs MRI was performed and it revealed a mild amount of increased signal within the critical zone of the supraspinatus tendon which could represent an imbibition phenomenon related to a partial articular surface tear or it could represent mild tendinitis.
16. Dr. Bruch opined that the plaintiff-employees fall, his sliding, trying to hold himself up with his left arm is consistent with the plaintiff-employees shoulder pain and subsequent diagnosis. Dr. Bruch further opined that, although the Durham Regional Hospital emergency room recordation of the plaintiffs description of his injury differs from Dr. Bruchs notes regarding plaintiffs description of his injury, it is possible plaintiff may have told medical personnel at Durham Regional Hospital emergency room something and they wrote it down differently "because many times what is recorded, it is not always 100 percent the whole truth.
17. Plaintiff continues to have left shoulder pain, but notwithstanding his pain, plaintiff returned to work for the Sage Group on or about September 30, 1998, where he earned $1.00 per hour less than he had earned with defendant-employer prior to his left shoulder injury.
18. Plaintiff sustained an injury by accident to his left shoulder arising out of the scope of his employment with defendant-employer on June 4, 1998.
19. Plaintiffs grabbing the ladder to prevent it from falling on two co-workers constituted an interruption of the plaintiffs normal work routine on or about July 2, 1998, thus establishing that the plaintiff sustained another injury by accident to his left shoulder arising out of his employment with defendant-employer on or about July 2, 1998.
***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an injury by accident to his left shoulder arising out of the scope of his employment with defendant-employer on June 4, 1998. N.C. Gen. Stat. 97-2(6).
2. Plaintiff sustained an injury by accident arising out of and in the scope of his employment with defendant-employer on or about July 2, 1998. The activity of grabbing the ladder and preventing it from falling on two co-workers constituted an interruption of the plaintiffs normal and customary work routine and establishes an accident within the meaning of the North Carolina Workers Compensation Act. N.C. Gen. Stat. 97-2(6).
3. As a result of plaintiffs compensable injuries by accident of June 4, 1998 and July 2, 1998, plaintiff is entitled to temporary total disability compensation at a rate of $373.52 per week beginning June 8, 1998 and ending June 16, 1998 and again from July 2, 1998 until July 8, 1998. N.C. Gen. Stat. 97-29.
4. As a result of plaintiffs compensable injuries by accident of June 4, 1998 and July 2, 1998, plaintiff is entitled to temporary partial disability compensation at a rate of two-thirds the difference between the amount of the plaintiffs pre-injury wages and his post-injury wages beginning September 3, 1998 and continuing for 300 weeks. N.C. Gen. Stat.97-30.
5. As a result of plaintiffs compensable injuries by accident of June 4, 1998 and July 2, 1998, plaintiff is entitled to have defendant pay for all of his medical expenses incurred or to be incurred, as a result of his compensable injuries by accident of June 4, 1998 and July 2, 1998, for so long as such evaluations, examinations and treatments may reasonably be necessary to effect a cure, give relief or tend to lessen plaintiffs period of disability. N.C. Gen. Stat. 97-25; N.C. Gen. Stat.97-2(19).
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to a reasonable attorneys fee herein provided, defendant shall pay plaintiff temporary total disability compensation at a rate of $373.52 per week beginning June 8, 1998 until June 16, 1998, and from July 2, 1998 until July 8, 1998. Compensation due which has accrued shall be paid to plaintiff in a lump sum, subject to the attorneys fees hereinafter provided.
2. Subject to a reasonable attorneys fee herein provided, defendant shall pay to plaintiff temporary partial disability compensation at a rate of two-thirds the difference between the amount of plaintiffs pre-injury wages and his post-injury wages beginning September 30, 1998 and continuing for 300 weeks from the date of injury until plaintiffs wages return to the same or greater wage he earned prior to his compensable injuries by accident with defendant-employer. Compensation due which has accrued shall be paid to plaintiff in a lump sum, subject to the attorneys fees hereinafter provided.
3. Defendant shall pay for all medical expenses incurred or to be incurred as a result of plaintiffs compensable injuries by accident of June 4, 1998 and July 2, 1998, for so long as such evaluations, examinations and treatments may reasonably be required to effect a cure, give relief or tend to lessen the period of plaintiffs disability.
4. A reasonable attorneys fee of 25% of the compensation benefits due plaintiff under Paragraphs 1, 2 and 4 of this Award are approved for plaintiffs counsel, which shall be deducted from the same Award and forwarded directly thereto.
5. Defendant shall pay the costs, including an expert witness fee in the amount of $235.00 to Dr. Bruch.
This 28th day of August 2000.
S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/_______________ LAURA K. MAVRETIC COMMISSIONER
DISSENTING:
S/_______________ DIANNE C. SELLERS COMMISSIONER